UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

BENJAMIN PAGANO, PAIGE ACEVEDO, and MAGGIE : 
MCNEIL, on behalf of themselves and others similarly situated, : 
DONALD NORWOOOD, CLARICE REINER, NATHAN : 
SEARING, NARA AVAKIAN, NOLAN SLAY, BEATRICE : 
DAMICO, JUSTIN BROWN, AARON APPLEBEY, DYLAN : 
PARR, ELIZABETH ARMANINI, ANGEL DE LOS SANTOS, : 
MICHELLE MAXWELL, and DANIEL M. BEAVER-SEITZ, :

                        Plaintiffs,

        – against –

HN & SONS LLC d/b/a Bushwick Public House, DERIHU 18
LLC a/k/a Chispa, and HOOMAN ENAYATIAN,

                        Defendants.

------------------------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**

22 Civ. 4897 (BMC) (VMS)

**Vera M. Scanlon, Chief United States Magistrate Judge:**

This is an action to recover damages for alleged violations of the Fair Labor Standards

Act, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, N.Y. Lab. L. §§ 190

et seq.; 650 et seq., and the corresponding New York regulations (the "NYLL").  See Am.

Compl., ECF No. 116.  Before the Court, on referral from the District Court, is Plaintiffs'[1]

motion for default judgment against HN & Sons LLC d/b/a Bushwick Public House ("BPH"),

Derihu 18 LLC a/k/a Chispa ("Chispa," and, with BPH, the "Corporate Defendants"), and

Hooman Enayatian ("Mr. Enayatian") (collectively, "Defaulting Defendants").  "Motion," ECF

---

[1] "Plaintiffs" include Benjamin Pagano, Paige Acevedo and Maggie McNeil (collectively, "Named Plaintiffs"); Donald Norwoood, Clarice Reiner, Nathan Searing, Nara Avakian, Nolan Slay, Beatrice Damico, Justin Brown, Aaron Applebey, Dylan Parr, Elizabeth Armanini, Angel De Los Santos, Michelle Maxwell and Daniel M. Beaver-Seitz (collectively, "Opt-In Plaintiffs"); and the class of Defendants' former employees as certified by the Court ("Class"), see "M&O," ECF No. 110 (certifying class of "all of defendants' non-exempt food and beverage and tip-receiving employees who worked for defendants at any time between August 19, 2016" and October 30, 2024).

1

No. 131.[2]  For the reasons set forth below, this Court respectfully recommends that the Motion be granted in part and denied in part.

## I. BACKGROUND

The following facts are taken from the Amended Complaint, which, in light of Defendants' failure to challenge Plaintiffs' allegations by participating in this lawsuit, the Court will accept as true for the purposes of the Motion.  See Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 234-35 (E.D.N.Y. 2024) (collecting cases).

### A. Factual Background

At all times relevant to this action, BPH was a café-bar located at 1288 Myrtle Avenue in Brooklyn, New York.  See Am. Compl. ¶¶ 14-15.  BPH closed in or around January 2025.  See Pls. Mem. at 5,[3] ECF No. 122-1.  Chispa was a café-bar located at 259 St. Nicholas Avenue in Brooklyn, New York.  See Am. Compl. ¶¶ 19, 22.  Chispa closed in January or February 2022. See id. ¶ 20.  BPH and Chispa had "identical wage and pay policies[,]" and shared employees at all times relevant to this action.  Id. ¶¶ 54-55.

Defendant Hooman Enayatian is the owner of both BPH and Chispa.  See id. ¶ 34.  Mr. Enayatian had the "authority to fire and hire employees, set employment [terms], wage and pay policies . . . maintain payroll records, set employee [work] scheduled and assign work to employees" at all times relevant to this action.  Id. ¶ 53.

David Laroda ("Mr. Laroda") and Josh Beckett ("Mr. Beckett") were the general managers of BPH and Chispa respectively.  See Compl. ¶¶ 42-43, ECF No. 1.  Plaintiffs allege

---

[2] As part of the Motion, the Court considers Plaintiffs' filings at ECF Nos. 121, 122, 130, 131 & 141.

[3] Plaintiffs' memorandum of law in support of their motion for a default judgment states that "BPH's closure was announced on its social media accounts @bushwickpublichouse after all depositions were conducted."  Pls. Mem.  at 5 n. 2, ECF No. 122-1.

that Messrs. Laroda and Beckett had authority to "hire and fire, assign work, supervise employees, maintain payroll records, and . . . exercised authority regarding the pay practices" at BPH and Chispa.  See id. ¶¶ 42-43.

Plaintiff Benjamin Pagano ("Mr. Pagano") worked for BPH as a server and a bartender from on or about September 14, 2021, to May 2, 2022.  See Am. Compl. ¶¶ 56-57.  Mr. Pagano worked on Tuesdays, Wednesdays and Fridays from 2:00 p.m. to 8:00 p.m., although he frequently worked until 10:00 p.m.  See id. ¶¶ 58-59.  Mr. Pagano received a flat wage of $77.00 per shift.  See id. ¶ 59.

Plaintiff Page Acevedo ("Ms. Acevedo") worked at BPH from January 2019 to May 2, 2022, initially as a "food and beverage service employee."  Id. ¶ 65.  From January 2019 to May 2019, Ms. Acevedo worked two days per week from 8:00 p.m. to 4:00 a.m. the following day and was paid $45 per shift.  See id. ¶¶ 67-68.  Ms. Acevedo ceased working regularly at BPH between May 2019 and December 2021, during which time she only worked approximately five eight-hour shifts for which she was paid $45 per shift.  See id. ¶ 68.  In December 2021, Ms. Acevedo began working regularly at BPH again.  See id. ¶ 69.  During this time, she worked Mondays and Wednesdays from 2:00 p.m. to 8:00 p.m.; she was paid $75 per shift.  See id. ¶ 69.[4]

In February 2022, Ms. Acevedo was promoted to a managerial position at BPH.  Id. ¶ 70.  As a manager, Ms. Acevedo worked on Mondays, Wednesdays and Saturdays between 2:00 p.m.

---

[4] None of Plaintiffs' allegations accounts for the City-mandated restaurant closure and restricted opening times during the Covid-19 pandemic.  See Flores v. Mission Ceviche, LLC, No. 24 Civ. 3626 (KHP), 2025 WL 2636303, at *2 (S.D.N.Y. Sept. 12, 2025) (describing the restaurant closure regulations during the Covid-19 pandemic).  As Defendants have not opposed the default judgment motion, the Court accepts Plaintiffs' allegations in the Amended Complaint and testimony as true for purposes of the Motion.

and 8:00 p.m., and she was paid a flat rate of $100 per shift.  See id. ¶¶ 74-75.  During this period, Ms. Acevedo also covered other employees' shifts: either 2:00 p.m. to 8:00 p.m. for $75.00 per shift, or 8:00 p.m. to 4:00 a.m. for $45.00 per shift.  See id. ¶ 76-77.  As manager, Ms. Acevedo "did not have any authority, input or say in any of Defendants' pay and payroll policies, including the tip stealing policy."  Id. ¶ 71.  During the time she worked as a manager, Ms. Acevedo "continued to work as a food[-]service employee and performed the same tasks as any other food[-]service employees, including serving customers directly, during her shifts."  Id. ¶ 72.

Plaintiff Maggie McNeil ("Ms. McNeil") worked at BPH as a food-and-beverage service employee from June 4, 2021, to May 2, 2022.  See id. ¶ 83.  Ms. McNeil worked Mondays, Tuesdays, Fridays and Saturdays from 8:00 p.m. to 4:00 a.m. at BPH.  See id. ¶ 85.  Ms. McNeil was paid a flat wage of $45 per shift.  See id. ¶ 86.

In addition to Named Plaintiffs, other food-and-beverage service employees at BPH and Chispa were subject to the same wage practices.[5]  Opt-In Plaintiffs were all "paid a base salary per shift that fell below the relevant minimum wage rate when broken out into an hourly [rate]."  See id. ¶¶ 94, 101, 108, 115, 122, 129, 136, 143, 150, 157, 164, 171, 178.  Similarly, members of the Class were not paid the minimum wage.  See id. ¶ 49.  Although Plaintiffs received tips in addition to their regular wages, Defendants allegedly retained 20% of all the tips that Plaintiffs were entitled to receive.  See id. ¶¶ 47, 95-96, 102-03, 109-10, 116-17, 123-24, 130-31, 137-38, 144-45, 151-52, 158-59, 165-66, 172-73, 179-80.

---

[5] As discussed more fully below, as relevant to determining the applicable minimum-wage rates, Plaintiffs do not state clearly the number of employees working regularly at BPH and Chispa.

### B. Procedural History

On August 18, 2022, Plaintiffs filed this action as a putative class and collective action, against BPH; Chispa; Messrs. Enayatian, Laroda and Beckett; and John Doe and or Jane Doe # 1-10, asserting claims of failure to pay minimum wages under the FLSA and the NYLL, unlawful tip retention under the FLSA and the NYLL, and  failure to provide wage statements under the NYLL and retaliation under the NYLL.[6] See Compl.

Pursuant to N.Y. Civil Practice Laws and Rules ("C.P.L.R.") § 311-a, service of process on BPH was effectuated via personal service on an "[a]uthorized [a]gent who specifically stated [she] was authorized to accept service on behalf of" BPH at 1288 Myrtle Avenue, Brooklyn, New York 11221.  ECF No. 17 (emphasis omitted).  Service of process was effectuated on Mr. Enayatian via personal service on a co-worker, Emma "Doe," at his place of business at 1288 Myrtle Avenue, Brooklyn, New York 11221.  See ECF No. 18.  The process server also mailed a copy of the Summons and Complaint to Mr. Enayatian at the same address.  Messrs. Laroda and Beckett were served with the Summons and Complaint at their place of business at 1288 Myrtle Avenue, Brooklyn, New York 11221.  See ECF Nos. 14-15.  BPH and Messrs. Enayatian, Laroda and Beckett (collectively, the "Answering Defendants") answered the Complaint, ECF No. 31, and, with leave of the Court, see 2/28/2023 Order, filed the Amended Answer, ECF No. 45.

Service of process on Chispa was effectuated via personal service on an "[a]uthorized [a]gent who specifically stated [that she] was authorized to accept service on behalf of" Chispa, at 1288 Myrtle Avenue, Brooklyn, New York 11221.  See ECF No. 16 (emphasis omitted).

---

[6] Plaintiffs withdrew their wage-statement and retaliation claims in 2022, and the District Court dismissed these claims without prejudice.  See ECF No. 35; 12/12/2022 Order.

Chispa did not answer or otherwise respond to the Complaint; a certificate of default was entered against it on December 20, 2022. See ECF No. 38.

On October 17, 2022, Plaintiffs moved for conditional collective certification of this action pursuant to 29 U.S.C. § 216(b). See ECF No. 26. The Court conditionally certified the collective, see 11/22/2022 Order, pending resolution of the Answering Defendants' motion to dismiss, ECF No. 34, and a more detailed scope of the collective, which "should include all current and former food[-]service employees of Bushwick Public House or Chispa," see 1/30/2023 Order.

Shortly after filing the Amended Answer and three days prior to the close of discovery, Answering Defendants' counsel sought leave to withdraw from representation of Messrs. Beckett and Laroda. See ECF No. 46. The Court granted the motion to withdraw but ordered that the deposition of Mr. Beckett proceed as scheduled on March 2, 2023. See 3/1/2023 Order.

On March 6, 2023, the Court approved distribution of the revised collective action notice, including posting of the notice at BPH and Chispa.[7] See 3/6/2023 Order. Ten days later, Plaintiffs filed a letter stating that Answering Defendants would not confer regarding where to post the notice at BPH and Chispa or the addition of certain members to the collective list. See ECF No. 51. The Court granted the motion and sanctioned Answering Defendants and their counsel $2,000 each for their failure to comply with the Court's Orders. See ECF No. 53.

Three days later, counsel for Mr. Enayatian and BPH ("BPH Defendants") moved to withdraw from representation. ECF No. 56. The Court stayed the action for 30 days to allow BPH Defendants to retain another attorney or to advise the Court that Mr. Enayatian would

---

[7] The Court had not yet been notified of Chispa's closure in early 2022. See Am. Compl. ¶ 20 (filed January 24, 2025).

6

proceed pro se, warning Mr. Enayatian that BPH's answer would be struck if counsel did not appear.  See 3/24/2023 Order.  At Mr. Enayatian's request, ECF No. 62, the Court granted BPH Defendants additional time to locate new counsel and continued the stay until May 17, 2023, as well as granting counsel's motion to withdraw.  See 4/26/2023 Order.

New counsel appeared for Answering Defendants, see ECF Nos. 66, 67, and requested an extension of the stay to allow counsel to review the case file, see ECF No. 68.  The Court extended the stay until July 23, 2023.

On September 18, 2023, Plaintiff moved for sanctions related to BPH Defendants' failure to identify 18 collective members and to preserve employment handbooks.  See ECF No. 70.  Finding that BPH Defendants' conduct was "obstructionist," the Court sanctioned BPH Defendants "in an amount equal to the reasonable attorneys' fees and costs that [P]laintiffs have incurred in seeking and obtaining these documents and information from third parties."  9/19/2023 Order.  The Court also stated that it will "provide the jury with an adverse inference instruction at trial concerning the missing policies and manuals which have inexplicably ceased to exist."  Id.  Following the close of discovery, Plaintiffs filed their motion for attorneys' fees related to the motion for sanctions.  See ECF No. 87; 10/30/2023 Order.

By the end of the collective-action-notice period, thirteen individuals, the Opt-In Plaintiffs, consented to join this lawsuit as plaintiffs.  See ECF Nos. 71-83.

After discovery had closed, but before any dispositive motion practice had commenced, BPH Defendants' second counsel filed a pre-motion conference letter seeking to withdraw from representation, citing the clients' failure to communicate with their counsel and to pay legal fees.  See ECF No. 96.  The Court directed counsel to file a motion to withdraw and warned Answering Defendants that

> because this is the second set of counsel that has moved to withdraw from defendants' representation, and because defendants already owe sanctions of attorneys' fees and costs in an amount to be determined by the Court but which will no doubt be in excess of $10,000, defendants are ORDERED to post a bond for costs and additional security in the amount of $20,000 within 14 days from the date of this Order, failing which their answer shall be stricken and the matter shall proceed to default judgment.

See 1/24/2024 Order.  Counsel moved to withdraw, see ECF No. 98, and the Court set a deadline for BPH Defendants to respond to the withdrawal motion, as well as "one final opportunity to post a bond for costs and additional security in the amount of $20,000 by that date as set forth in this Court's 1/24/24 Order, failing which their answer shall be stricken."  2/8/2024 Order.  When BPH Defendants failed to respond to the motion to withdraw as attorney and did not post a bond, the Court granted the motion to withdraw as attorney, struck the Amended Answer and directed the Clerk of Court to "enter default as to both."  2/27/2024 Order; see 3/5/2024 Order.  The Clerk of Court entered a certificate of default as to BPH Defendants.  See ECF No. 104.

After the Amended Answer was struck, Plaintiffs filed a letter with the Court seeking to move for class certification under Federal Rule of Civil Procedure ("Rule") 23 and to dismiss Messrs. Laroda and Beckett as Defendants.  See ECF No. 102.  The Court granted Plaintiffs leave to move for class certification and dismissed Plaintiffs' claims against Messrs. Laroda and Beckett.  See 3/5/2024 Order.  Plaintiffs filed their motion for class certification, see ECF No. 107, which the District Court granted, certifying Plaintiffs' class of "non-exempt food and beverage service and tip-receiving employees who worked for defendants at any time between August 19, 2016," and October 30, 2024 (the "Class").  See ECF No. 110.  The District Court approved Plaintiffs' proposed class notice, which provided a thirty-day opt-out period.  See ECF No. 111; 11/12/2024 Order.

8

After the class opt-out period expired, the Court directed Plaintiffs to "file and serve within 7 days an amended complaint that adds each of the collective plaintiffs as parties and asserts an FLSA claim on each of their behalf." 1/14/2025 Order. In the event the Defaulting Defendants failed to respond to the amended complaint, the Court ordered "each member of the collective" to "request entry of default from the Clerk within 10 days of the default." Id. This Order was mailed to Defaulting Defendants at 1288 Myrtle Avenue, Brooklyn, New York 11221, but it was returned as undeliverable. See ECF No. 117.

Plaintiffs filed the Amended Complaint[8] and served it on Defaulting Defendants via certified mail to 1288 Myrtle Avenue, Brooklyn, New York 11221. See ECF No. 116. When Defaulting Defendants failed to respond to the Amended Complaint, Plaintiffs requested that certificates of default be issued. See ECF No. 118.

After the Clerk of Court issued certificates of default against Defaulting Defendants, ECF No. 119, Plaintiffs filed a request for a sum certain default judgment, pursuant to Rule 55(b)(1). See ECF No. 121. The Court construed Plaintiffs' request as a motion for a default judgment under Rule 55(b)(2), as "it requires the drawing of inferences and the application of a standard of proof that is not a matter of 'computation' by the Clerk." See 4/7/2025 Order. The Court directed Plaintiffs to file a memorandum of law in support of their motion, see 4/7/2025 Order, which Plaintiffs filed, ECF No. 122.

---

[8] The Amended Complaint does not assert any new causes of action against any defendant or add any new defendant to this action, but, rather, it removes claims against Messrs. Laroda and Beckett, and the John and Jane Doe Defendants (although the John and Jane Doe Defendants are still mentioned in the preliminary statement of the Amended Complaint). Compare Compl., with Am. Compl. Plaintiffs did not re-allege their wage-notice, wage-statement and retaliation claims. See Am. Compl.

The District Court referred Plaintiffs' motion for a default judgment to the undersigned for a report and recommendation, "which referral shall include [Plaintiffs' motion for attorneys' fees following the Court's award of sanctions at ECF No.] 87 and consideration of whether [the motion at ECF No.] 87 may be moot in light of the [report and recommendation] on [ECF No.] 121." 4/7/2025 Order.

This Court issued a report and recommendation regarding the motion for attorneys' fees, ECF No. 87, which recommended that Plaintiffs be awarded $8,000.00 in reasonable attorneys' fees, representing 20 hours of work performed at an hourly rate of $400.00, as well as an award of costs. See ECF No. 123. The District Court adopted the report and recommendation. See 9/12/2025 Order.

With respect to the motion for a default judgment, during the status conference to discuss the Motion, the Court identified several deficiencies and directed Plaintiffs' counsel to supplement the Motion with certain materials. See 8/28/2025 Order. Plaintiffs filed a supplement, which included, inter alia, portions of transcripts of the Individual Defendants' depositions and a proposed judgment. See ECF No. 131. After reviewing this supplemental submission, the Court scheduled oral argument to discuss several areas that remained deficient, including, inter alia, support for Plaintiffs' calculation of minimum-wage damages and withheld tips at both BPH and Chispa. See 12/9/2025 Order. During oral argument, Plaintiffs had an opportunity to address these issues with the Court, and Plaintiffs were granted leave to file an additional supplemental submission. See generally Tr. 12/18/2025 Oral Arg., ECF No. 138. On January 23, 2026, Plaintiffs filed a further supplement, which includes a letter setting forth Plaintiffs' updated damages calculations, see "Suppl. Ltr.," ECF No. 141; additional declarations from Plaintiffs, see ECF Nos. 141-1 to 6; and additional credit-card records, see ECF No. 141-7.

10

## II.    LEGAL STANDARD FOR DEFAULT JUDGMENT

Rule 55 "provides a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011).  In the first step, upon a showing, "by affidavit or otherwise," that the party against whom default judgment is sought "has failed to plead or otherwise defend" the action, then "the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Once the clerk has entered a certificate of default, then, at the plaintiff's request, the clerk must enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1).  If the calculation of damages requires any level of discretion, the plaintiff may petition the court for a default judgment. See Fed. R. Civ. P. 55(b)(2).

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); see Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011).  Nevertheless, a court may not enter default judgment "in a manner inconsistent with due process of law." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 132 (2d Cir. 2011) (citation omitted); see Enron Oil Corp., 10 F.3d at 96 (observing that "procedural rules" governing default judgments "play a constructive role in maintaining the orderly and efficient administration of justice").  Once a defendant has defaulted, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (noting that the court must still independently determine "whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law").

11

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgrp., Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court "must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff's damages must "naturally flow from the injuries pleaded." Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) (quoting Greyhound, 973 F.2d at 159).

## III. DISCUSSION

### A. Plaintiffs' Compliance With Procedural Rules

In evaluating a motion for default judgment, a court should consider whether a plaintiff has "shown that Defendants had notice about the action and an opportunity to defend against it." Fermin, 93 F. Supp. 3d at 30. Generally, a "motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 241-42 (E.D.N.Y. 2024) (citations omitted). Before default judgment can be granted, the Court must determine whether Plaintiffs complied with the Federal Rules of Civil Procedure ("Federal Rules"), the Local Civil Rules of the Southern and Eastern Districts of New York ("Local Civil Rules"), and the Servicemembers Civil Relief Act ("SCRA").

### 1. Federal Rule of Civil Procedure 4

A corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Service of process on an individual and a corporate entity is valid under the Federal Rules of Civil Procedure if it

complies with "state law for serving a summons in an action . . . in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1) (service on an individual); Fed. R. Civ. P. 4(h)(1)(A) (service on a corporation, partnership or association).  As this action was commenced in the Eastern District of New York, service of process complies with the Federal Rules if it is permissible under New York law.  New York permits service of process on an individual by personally delivering the summons and complaint to

> a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other.

N.Y. C.P.L.R. § 308(2).

The Answering Defendants initially appeared in this action, see ECF Nos. 31, 45, although their answer was later struck, see 12/27/2024 Order.  Given that the Answering Defendants did move to dismiss for failure of service or service of process, these defenses are waived.  See Fowler v. City of New York, No. 13 Civ. 2372 (KAM) (RML), 2015 WL 9462097, at *2 n.1 (E.D.N.Y. Dec. 23, 2015), aff'd, 807 F. App'x 137 (2d Cir. 2020).

Chispa was properly served via an agent authorized to accept service on its behalf.  See ECF No. 16; Fed. R. Civ. P. 4(h)(1)(b).  Chispa did not answer, appear through counsel, see ECF No. 28 (appearing for all defendants except Chispa), or otherwise defend this action.

### 2.    Local Civil Rules

In addition to effectuating proper service on Defendants under the Federal Rules, a movant for default judgment must also comply with the Local Civil Rules, strict compliance with which courts in this District generally require "[a]bsent special circumstances."  Dacas v.

13

Duhaney, No. 17 Civ. 3568 (EK) (VMS), 2023 WL 6297530, at \*6 (E.D.N.Y. Sept. 8. 2023), R&R adopted, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023).  In many cases, "failure to comply with [Local Civil Rule 55.2] is a basis to deny a motion for default judgment."  Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 116 (E.D.N.Y. 2023).  Nevertheless, courts have excused a plaintiff's minor violations of Local Civil Rule 55.2, if the "complaint and default judgment papers provide sufficient notice of the relief sought as part of the motion for default judgment," and if the noncompliance "does not prejudice [the defendants]."  Jiao, 2020 WL 6370148, at \*7; see Zabrodin, 702 F. Supp. 3d at 117.

Under Local Civil Rule 55.2, the moving party in a default judgment motion must file "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment."  Local Civ. R. 55.2(b).  The moving party must also mail all required moving papers "to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)."  Local Civ. R. 55.2(c).

As part of the Motion, Plaintiffs filed certificates of default, ECF No. 121-2, proof of having mailed the motion papers to the Corporate Defendants at their last-known business addresses and to Mr. Enayatian at his last-known residence, see ECF No. 131-5, and a proposed judgment, ECF No. 131-4.  Plaintiffs did not file a copy of the Amended Complaint, but that was mailed to Defaulting Defendants, see ECF No. 116, and can be found on the docket, see ECF No. 116.

Despite Plaintiffs' failure to comply strictly with Local Rule 55.2, the Court finds that Defaulting Defendants have been put on notice of the claims for which they may be liable, and

the damages they may owe.  Accordingly, this Court finds that Plaintiffs' failure to comply strictly with Local Rule 55.2 should be excused.[9]

### 3.    Servicemembers Civil Relief Act

In any civil action "in which the defendant does not make an appearance[,]" the Court must ensure that the plaintiff has complied with the SCRA before entering a default judgment. See 50 U.S.C. § 3931.  In order to comply with the SCRA, a plaintiff moving for default judgment must file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]"  50 U.S.C. § 3931(b)(1)(A).  In order to affirm that a defendant was not in military service, the plaintiff must conduct an investigation both "after the commencement of an action or proceeding" and "after a default in appearance[.]"  See Tenemaza v. Eagle Masonry Corp., No. 20 Civ. 452 (AMD) (VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (internal quotation omitted).

Plaintiffs complied with the SCRA.  Upon serving the Summons and Complaint, Plaintiffs' process served asked Emma Doe, who accepted service on behalf of Mr. Enayatian, whether he was in active military service and "received a negative reply."  See ECF No. 18. After issuance of the certificates of default, Plaintiffs filed an affirmation, see ECF No. 131-1, and a status report from the Department of Defense, see ECF No. 131-2, both of which state that Mr. Enayatian is not currently in military service.  The Court finds that this is sufficient evidence of investigation into Mr. Enayatian's military status when this action was commenced and after a default was entered.

---

[9] Nevertheless, Counsel is cautioned to comply with all rules of the Court, which include the Federal Rules of Civil Procedure, the Local Civil Rules, and the individual practice rules of all judges assigned to the case.

Given that Plaintiffs have complied with Federal Rule 4 and the SCRA, and that they have substantially complied with Local Civil Rule 55.2, the Court finds that Plaintiffs' default judgment motion is procedurally valid.

### B. Factors Required For A Default Judgment

Once a court establishes that service on the defendants was proper, the "next question, before reaching liability or damages, is whether [a defendant's] conduct is sufficient to warrant entry of a default judgment." Melo v. Milagro Grocery Corp., No. 21 Civ. 4438 (PKC) (SJB), 2024 WL 4250267, at *6 (E.D.N.Y. Sept. 26, 2024). In order to determine whether default judgment is warranted, courts consider "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." Fermin, 93 F. Supp. 3d at 30-31 (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)).

The Court finds that the first factor in evaluating a default judgment is satisfied. The Answering Defendants appeared through counsel and filed an answer, see ECF Nos. 28, 31, and proceeded to actively defend this case until counsel moved to withdraw from representation of Messrs. Laroda and Beckett approximately five months later, ECF No. 46, and the second counsel for BPH Defendants moved to withdraw eighteen months later, see ECF Nos. 96, 98. After BPH Defendants failed twice to post bond as ordered by the Court, their answers were struck, and the Court directed the Clerk to enter a certificate of default against them. See 2/27/2024 Order.

As to the Answering Defendants, "by appearing, litigating, and then . . . withdrawing from the proceedings," the Answering Defendants have "forfeited [any] jurisdictional defense" in this action. See Mickalis, 645 F.3d at 139. Through their initial participation in this case, the Answering Defendants have "acquiesced to the jurisdiction of the district court," which may, if

16

warranted, enter a default judgment against them.  See id. at 140.  As discussed above, Chispa "failed to plead or otherwise defend" this action.  Fed. R. Civ. P. 55(a).  A "defendant's failure to respond to the complaint is sufficient to demonstrate willfulness."  Fermin, 93 F. Supp. 3d at 31 (collecting cases).

The Court finds that Defaulting Defendants' default is willful.

The second factor warranting entry of a default judgment is also satisfied.  A plaintiff may suffer prejudice upon the denial of a default judgment motion if there are no other options available for the plaintiff to obtain relief.  See Fermin, 93 F. Supp. 3d at 31.  Such is the case for Plaintiffs in this action, which was filed more than three years ago.  As discussed at length above, Plaintiffs and the Court have repeatedly endeavored to encourage Defendants to participate in this action.  The Court finds that if a default judgment is denied, Plaintiffs would have no other options by which to obtain relief from Defaulting Defendants and would suffer prejudice as a result.

As to the third factor, Defaulting Defendants cannot establish a meritorious defense in this action.  In light of their answers having been struck, Mr. Enayatian and BPH have failed to raise any meritorious defense.  See Luo v. Baldwin Union Free Sch. Dist., 677 F. App'x 719, 720 (2d Cir. 2017) (noting that the "practical effect of" granting a motion to strike an answer is a default judgment).  Chispa did not answer and thus has no defense, let alone a meritorious one. See Pich v. Queens Garden Nursery Inc., No. 22 Civ. 3362 (MKB) (MMH), 2024 WL 687234, at *4 (E.D.N.Y. Feb. 20, 2024), R&R adopted, 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024).

The Court finds that all three factors necessary for a default judgment have been met in this case.  The Court will therefore analyze whether Defendants are liable to Plaintiffs for violations of the FLSA and the NYLL based on the allegations in the Amended Complaint.

17

### C. Liability

In order to determine whether a defendant in default is liable for a plaintiff's claims, "a court may accept all well-pleaded allegations in the [] complaint as true but must still satisfy itself that the plaintiff has established a sound legal basis on which liability may be imposed." Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). The Court will examine whether, accepting Plaintiffs' well-pled allegations as true, Plaintiffs are protected under the FLSA and NYLL, followed by whether Defaulting Defendants are liable for wage-and-hour violations under the FLSA and NYLL.

### 1.    Applicability Of The FLSA

In order to establish liability under the FLSA, a plaintiff must prove that "(1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA."[10] Payamps v. M&M Convenience Deli & Grocery Corp., No. 16 Civ. 4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (citation omitted & cleaned up); see Isett v. Aetna Life Ins. Co., 947 F.3d 122, 127-28 (2d Cir. 2020). In addition, in order to qualify for the FLSA's protections, a plaintiff must show either that the employees are "engaged in commerce," or that the employer is an "enterprise engaged in commerce[.]" Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96-97 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)) (emphasis omitted); see Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 366-67 (E.D.N.Y. 2022).

### a.  Statute Of Limitations

Although the FLSA statute of limitations is normally two years, the limitations period may be extended to three years for "a cause of action arising out of a willful violation[.]" 29

---

[10] There are other formations of liability under the FLSA, see, e.g., 29 U.S.C. §§ 201 et seq.; this formulation is applicable in this case.

18

U.S.C. §255(a). On a motion for a default judgment, a court will apply the three-year statute of limitations if the plaintiff alleges that the defendant's actions were "knowing and willful." Dacas, 2023 WL 6297530, at *6. Plaintiffs allege that Defaulting Defendants willfully failed to pay them the minimum wage and remit all tips that Plaintiffs earned. See Am. Compl. ¶¶ 202, 188, 192, 206-07.

Accordingly, the three-year FLSA limitations period applies to this case. Because Plaintiffs filed the Complaint on August 18, 2022, the limitations period for Plaintiffs' FLSA claims extends to August 18, 2019, which cuts off liability for some of Plaintiffs' FLSA claims, such as for Ms. Acevedo, who began working in January 2019, see Am. Compl. ¶ 65.[11]

As such, this Court respectfully recommends that the Motion be denied as to any FLSA violations that took place prior to August 18, 2019.

### b. Defaulting Defendants' Engagement In Interstate Commerce

The FLSA limits the scope of its wage-and-hour protections to plaintiffs who are engaged in interstate commerce. See, e.g., Jacobs, 577 F.3d at 96 (citing 29 U.S.C. § 207(a)(1)); Cabrera v. Canela, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019). A plaintiff may satisfy the "engaged in commerce" requirement of the FLSA by establishing either that the plaintiff employee "personally engaged in interstate commerce or in the production of goods for interstate commerce," or that the defendant employer was "an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." Rodriguez, 784 F. Supp. 2d at 120. These types of coverage are respectively known as "individual coverage" and "enterprise coverage." See id. As is relevant in this case, the FLSA defines an "enterprise engaged in

---

[11] Although all other Named Plaintiffs for whom dates of employment are alleged began working at BPH or Chispa after August 18, 2019, Plaintiffs seek damages for Class members who worked in the period of 2016 through 2019. See ECF No. 122-7 at 2.

commerce or in the production of goods for commerce" as a business that, <u>inter alia</u>, "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[,]" and has an "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

On a motion for a default judgment, a plaintiff's otherwise conclusory allegations in the complaint may establish enterprise FLSA coverage if "it may be inferred from the type of business enterprise that it was engaged in interstate commerce." <u>Cabrera</u>, 412 F. Supp. 3d at 179-80 (collecting cases). Even if the complaint "restates [the] statutory definition [of enterprise coverage] without providing any additional facts[,]" a court may reasonably infer that "the myriad goods necessary to operate a . . . restaurant with . . . over $500,000.00 in annual sales do not exclusively come from New York State." <u>Fermin</u>, 93 F. Supp. 3d at 33 (inferring that a restaurant-defendant "requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more"); <u>see</u> <u>Chavez v. Roosevelt Tropical Corp.</u>, No. 23 Civ. 2413 (EK) (PK), 2024 WL 4244087, at *5 (E.D.N.Y. Aug. 21, 2024) (finding that allegations that a restaurant "earned at least $500,000 in annual revenue" and "is an employer engaged in interstate commerce and/or in the production of goods for interstate commerce" established enterprise coverage, even without "additional facts"), <u>R&R adopted</u>, 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024). A court may also infer that a plaintiff food-service worker at a café-bar "handle[d] goods or materials that have moved in interstate commerce" while at work. <u>Galicia v. 63-68 Diner Corp.</u>, No. 13 Civ. 3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015); <u>see</u> <u>Chavez</u>, 2024 WL 4244087, at *5 ("It is

20

reasonable to infer that a restaurant worker engaged in food[-]service tasks handled tools and materials that were moved or produced in interstate commerce.").

Here, the Court finds that enterprise coverage has been sufficiently established. The Amended Complaint alleges that the annual gross sales of BPH and Chispa exceeded $500,000, see Am. Compl. ¶¶ 18, 25, 27, and that Plaintiffs and other employees at BPH and Chispa handled "goods or materials that have been moved in or produced for commerce," such as "sugars, coffees, teas, beers, and liquors." See Am. Compl. ¶¶ 18, 25. Moreover, the Court can infer that BPH and Chispa, as café-bars, imported from outside New York many of the goods necessary to operate their businesses, Fermin, 93 F. Supp. 3d at 33, and that Plaintiffs, as food-and-beverage employees, handled such goods that had moved in interstate commerce. See Galicia, 2015 WL 1469279, at *2-3.

These allegations, accepted as true, sufficiently demonstrate engagement in interstate commerce.

### c.  Defaulting Defendants' Status As Employers

Under the FLSA, the definition of "employer" is liberally construed beyond common law principles of agency. See Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013). The Second Circuit looks to the "economic reality" of the relationship between the plaintiff and the defendant, based on the totality of the circumstances. Id. at 104. In order to determine the status of a putative employer, courts examine "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008). The lack of one factor "is not fatal" to a plaintiff's claims, as the economic-reality test is based on the totality of the circumstances. Fermin, 93 F. Supp. 3d at 36.

21

An individual defendant may also be an "employer" for the purposes of the FLSA if the individual exercised "operational control" over the defendant company and "was engaged in the culpable company's affairs to a degree that it is logical to find him liable to the plaintiff employees[.]" Irizarry, 722 F.3d at 106, 117 (affirming the liability of an individual defendant based on his "active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees," and his "almost daily" visits to some of his grocery stores). In order to determine whether an individual defendant is an "employer" under the FLSA, courts use the same "economic reality" test as is used for a corporate defendant. See Fermin, 93 F. Supp. 3d at 35.

Here, the Court finds that Defaulting Defendants are joint employers under the FLSA. Mr. Enayatian "owned and controlled" BPH and Chispa, and he had "the authority to hire and fire, supervise employees [and] maintain payroll records," all of which he exercised with respect to pay practices. See Am. Compl. ¶ 34. Moreover, Plaintiffs allege that the Corporate Defendants "maintained control, oversight, and direction over Plaintiffs." Id. ¶¶ 29, 31.

Accepting Plaintiffs' allegations in the complaint as true, the Court concludes that Plaintiffs have sufficiently established that the Defaulting Defendants were Plaintiffs' employers.

### d. Plaintiffs' Status As Defaulting Defendants' Employees

Generally, if a defendant is a covered employer in an action alleging violations of the FLSA, the plaintiff is a covered employee. With certain exceptions, the FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In order to determine whether an individual is an employee under the FLSA, courts in the Second Circuit apply the same "economic reality" test as the FLSA's "employer" analysis. See Irizarry, 722 F.3d at 104.

22

Here, the Court has already found that Defaulting Defendants may be held jointly and severally liable as employers under the FLSA.  See, supra, Part III.C.1.c.  Plaintiffs, who were employed as food-service employees at Defaulting Defendants' café-bars, do not fall under any exceptions to the FLSA's definition of "employee."  See 29 U.S.C. § 203(e).  The Court, therefore, finds that Plaintiffs are "employees" as defined by the FLSA.

### e.    Applicability Of FLSA Exemptions

Even if either an employer or employee is engaged in commerce, Plaintiff may not recover under the FLSA if he falls within the FLSA's "litany of exemptions."  Fermin, 93 F. Supp. 3d at 32 (noting that a "kitchen helper/food preparer" is not an exempt employee); see 29 U.S.C. § 213(a).  The "burden rests on the employer to prove that a particular employee is exempt from the [FLSA's] requirements."  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).  A defendant in default "fail[s] to sufficiently invoke any exemptions."  Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 275 (E.D.N.Y. 2024).  On a motion for default judgment, therefore, the Court may find that Plaintiffs are not exempt employees if they "do not allege any facts that would make them exempt under the FLSA or NYLL."  Id.  Here, the Court does not find that any exemptions apply to Plaintiffs, who were food-service workers employed at Defaulting Defendants' café-bars.  See, e.g., Fermin, 93 F. Supp. 3d at 32 (finding that waiter and food preparers are not exempt from the FLSA's protections); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (same).  Moreover, because Defendants have defaulted in this action, "they have failed to sufficiently invoke any [FLSA] exemptions."  Jimenez, 744 F. Supp. 3d at 247.

Accordingly, Plaintiffs are covered employees under the FLSA.

### 2.    Applicability Of The NYLL

In order to plead a NYLL claim, Plaintiffs "must establish that [the] employment

23

relationship with Defendants falls within the NYLL, which applies to any person employed for hire by an employer in any employment." Solis v. Tropical Restaurant Bar Inc., No. 23 Civ. 1707 (ENV) (MMH), 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (citations & quotation marks omitted).

### a. Statute Of Limitations

The statute of limitations for NYLL claims is six years. See N.Y. Lab. L. §§ 198(3), 663(3). Because this action was filed on August 18, 2022, the presumptive limitations period for Plaintiffs' NYLL claims began August 18, 2016.

New York's response to the Covid-19 pandemic extended the limitations period for Plaintiffs' NYLL claims. New York Executive Order 202.8, signed March 20, 2020, tolled "any specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of this state." N.Y. Exec. Order 202.8. This tolling period was extended several times, through several subsequent executive orders, until it ended November 3, 2020. See N.Y. Exec. Order 202.67. Courts have interpreted these executive orders as a toll of statutes of limitations for New York laws. See Powell v. Scollard, No. 21 Civ. 1477 (VSB), 2023 WL 5975249, at *3-4 (S.D.N.Y. Sept. 14, 2023); McLaughlin v. Snowlift, Inc., 185 N.Y.S.3d 212, 213-14 (2d Dep't 2023). As such, the statute of limitations on the NYLL was tolled from March 20, 2020, to November 3, 2020, or 228 days. See Holguin v. Quality Furniture NY LLC, No. 23 Civ. 0004 (AT) (RFT), 2024 WL 4954048, at *6 (S.D.N.Y. Nov. 8, 2024), R&R adopted, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025). Taking this tolling period into effect, the limitations period for Plaintiffs' NYLL claims began January 3, 2016.[12]

Plaintiffs' claims therefore fall within the NYLL statute of limitations.

---

[12] The Class period remains August 19, 2016, through October 30, 2024. See ECF No. 110.

24

### b.  Substantive Coverage Requirements

Coverage for an employee under the NYLL is more expansive than it is under the FLSA. In order to establish liability under the NYLL, a plaintiff must "prove that he was an employee and that [the defendants] were employer[s] as defined by the statue and accompanying regulations."  Sanchez, 643 F. Supp. 3d at 368-69 (quoting Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)).  Unlike the FLSA, the NYLL does not have a minimum-revenue requirement or require participation in interstate commerce.  See Burns v. Scott, 635 F. Supp. 3d 258, 274 (S.D.N.Y. 2022).

A plaintiff who falls under the FLSA's umbrella will usually enjoy the NYLL's protections as well.  Although the Second Circuit has not definitively ruled on whether the NYLL and the FLSA apply the same tests for an employer or a joint employer, see Irizarry, 722 F.3d at 117; Perez Perez v. Escobar Construction, Inc., No. 23 Civ. 1240, 2024 WL 3594325, at *2 n.3 (2d Cir. July 31, 2024), the Second Circuit "construe[s] the NYLL definition [of an employee] as the same in substance as the definition in the FLSA."  Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (internal quotation omitted).  District courts in the Second Circuit have held that the "NYLL's definition of [an] employer is . . . nearly identical to that of the FLSA, and the analysis of the employment relationship is based on the same factors."  Cao, 727 F. Supp. 3d at 275 (citations & quotation marks omitted); see Zabrodin, 702 F. Supp. 3d at 117. In order to determine joint and several liability for multiple defendant employers, courts apply the same standard to FLSA and NYLL claims.  See Echevarria v. ABC Corp., No. 21 Civ. 4959 (JS) (ARL), 2023 WL 5880417, at *5 (E.D.N.Y. Sept. 11, 2023), adhered to on reconsideration, 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024); Khan v. Nyrene, Inc., No. 18 Civ. 557 (ARR) (ST), 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), R&R adopted, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020).  "Generally, where liability is found under the FLSA, it is also found

25

under the NYLL." Palaghita v. Alkor Capital Corp., No. 19 Civ. 154 (ARR) (RER), 2021 WL

4464121, at *8 (E.D.N.Y. Aug. 20, 2021), R&R adopted, 2021 WL 4463483 (E.D.N.Y. Sept. 29,

2021).

Here, the Court has already established that Defendants were jointly and severally liable

as employers under the FLSA, and that Plaintiffs were non-exempt employees. See, supra, Parts

III.C.1.a., III.C.1.b., III.C.1.c. As such, under the NYLL, Plaintiffs are employees, and

Defendants are employers.

### 3. Defaulting Defendants' Wage-and-hour Violations

### a. Minimum-wage Violations

The FLSA and the NYLL each set minimum hourly wages for each covered employee.

See 29 U.S.C. § 206; N.Y. Lab. L. § 652. The federal minimum wage under the FLSA was

$7.25 per hour for all relevant times. See 29 U.S.C. § 206(a)(1)(C). Compliance with the

FLSA's minimum-wage provision does not "excuse noncompliance" with a state's minimum-

wage law, if the state's minimum wage is higher. See 29 U.S.C. § 218(a).

The minimum wage under the NYLL during the relevant limitations period was based on

the employer's geographic location and the number of employees. See N.Y. Lab. L. § 652(1).

Within New York City, minimum-wage rates were higher for "[l]arge employers" (defined as

employers "of eleven or more employees") than for "[s]mall employers" (defined as employers

of "ten or less employees"). N.Y. Lab. L. § 652(1)(a). Where, as here, multiple work locations

operate as a single integrated enterprise, courts may consider the collective number of employees

across all locations. See, e.g., Rosa, 2023 WL 2745214, at *8-9.

Despite contending that the Defaulting Defendants did, at all relevant time[s], employ[]

eleven (11) or more employees," Pl. Mem. at 11, Plaintiffs do not allege how many employees

Defendants had at any given time during the relevant period. Plaintiffs state that "there are more

than 80 members of the class during the class period," Am. Compl. ¶ 39, and the Court has found that Plaintiffs identified 54 class members who worked "in just the final three years of the class period." M&O, 2024 WL 4625296, *2.

Because the Court must draw all reasonable inferences in favor of the movant, see Finkel, 577 F.3d at 84, the Court finds it reasonable to assume that Defaulting Defendants employed at least 11 employees during the relevant period and thus qualified as a "large employer" under the NYLL.

Accordingly, during the relevant period, the NYLL minimum-wage rates applicable to Plaintiffs were as follows.[13]

| Effective Date | Hourly Minimum-wage Rate |
|---|---|
| 12/31/2016 | $11.00 |
| 12/31/2017 | $13.00 |
| 12/31/2018 | $15.00 |

As discussed above, from on or about September 14, 2021, to May 2, 2022, Mr. Pagano regularly worked shifts from 2:00 p.m. to 8:00 p.m., although he frequently worked until 10:00 p.m. See Am. Compl. ¶¶ 58-59. For these shifts, Mr. Pagano was paid a flat wage of $77.00 per shift. See id. ¶ 59. Assuming Mr. Pagano worked a minimum of six hours per shift, his regular rate was $12.83, which fell below the applicable NYLL minimum-wage rate.

As to Ms. Acevedo, from January 2019 to May 2019, she worked two eight-hour shifts per week and was paid $45 per shift. See id. ¶¶ 67-68. Her regular rate during this period was

---

[13] Because Defaulting Defendants have not continued to defend themselves in this action, have not opposed the Motion, and have not presented evidence of having provided written notice to employees regarding any tip credit, the Court will not consider whether Defendants were entitled to a tip credit such that a lower hourly wage for Plaintiffs was lawful. See Maldonado v. Aangan of India LLC, No. 20 Civ. 9598 (JGLC) (SLC), 2024 WL 3910812, at *13 (S.D.N.Y. July 22, 2024) (finding that defaulting defendants were not entitled to take any tip credit against plaintiffs' wages because they did not meet the notice requirements of the FLSA and NYLL), R&R adopted, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024).

thus $5.63.  From December 2021 through January 2022, Ms. Acevedo worked from 2:00 p.m. to 8:00 p.m. and was paid $75 per shift, a regular rate of $12.83.  See id. ¶ 69.  From February through May 2, 2022, Ms. Acevedo worked two different types of shifts: as a manager, from 2:00 p.m. and 8:00 p.m., at a flat rate of $100 per shift, a regular rate of $16.67, see id. ¶¶ 74-75; or as a food-service employee, from 2:00 p.m. to 8:00 p.m. for $75.00 per shift, or from 8:00 p.m. to 4:00 a.m. for $45 per shift, see id. ¶ 77, for a regular rate of $12.50 or $9.38.  Accordingly, except for the days in which Ms. Acevedo was paid $100 per six-hour shift, her regular rate fell below the applicable NYLL minimum-wage rate.

From June 4, 2021, to May 2, 2022, Ms. McNeil regularly worked from 8:00 p.m. to 4:00 a.m. at BPH, for which she was paid a flat wage of $45 per shift.  See id. ¶¶ 85-86.  Ms. McNeil's regular rate was thus $5.63, which fell below the applicable NYLL minimum-wage rate.

The Opt-In Plaintiffs were all "paid a base salary per shift that fell below the relevant minimum[-]wage rate when broken out into an hourly [rate]."  See id. ¶¶ 94, 101, 108, 115, 122, 129, 136, 143, 150, 157, 164, 171, 178.  Although Plaintiffs do not plead facts as to Class members' wage rates with any specificity, given that Plaintiffs alleged that the Class representatives were paid below the relevant minimum-wage rate, see id. ¶ 49, the Court accepts as true all well-pleaded allegations in the Amended Complaint and "draw[s] all reasonable inferences in [Plaintiffs'] favor," Finkel, 577 F.3d at 84, such that the Court finds that the regular rate of both the Opt-In Plaintiffs and the Class did fall below the applicable NYLL minimum-wage rate.

As such, this Court respectfully recommends that Defaulting Defendants be found liable to Plaintiffs and the Class for NYLL minimum-wage violations.[14]

### c. Withheld Tips

Both the FLSA and the NYLL contain provisions prohibiting employers from keeping tips that employees earn. Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Under the NYLL, "[n]o employer or his agent . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. L. § 196-d. "The test for whether an individual is an 'employer' forbidden from keeping employee's tips under the FLSA and NYLL is the same as the one used to assess individual liability" under the FLSA. Managhas v. Eight Oranges Inc., No. 22 Civ. 4150 (LJL), 2024 WL 4555669, at *18 (S.D.N.Y. Oct. 22, 2024).

Plaintiffs contend that, pursuant to a common policy, Defaulting Defendants withheld 20% of all tips that Plaintiffs should have been paid and that this constituted a "widespread pattern and practice." See, e.g., Compl. ¶¶ 62, 80, 184, 188. Because they are considered employers under both the FLSA and the NYLL, see supra Parts III.C.1.c, III.C.2.b, Defendants were not permitted to withhold or keep any tips. See 29 U.S.C. § 203(m)(2)(B); N.Y. Lab. Law § 196-d.

Accordingly, the Court respectfully recommends that Defaulting Defendants be found liable to Plaintiffs for unlawfully withholding tips under the FLSA and the NYLL.

---

[14] Given that the violation of the NYLL yields greater damages than any FLSA violation, the Court will not evaluate the alleged FLSA minimum-wage violation.

29

### D. Damages

Plaintiffs seek an award of $109,889.00 in compensatory damages for withheld tips, and $278,544.00 in compensatory damages for minimum-wage violations.  See Suppl. Ltr. at 3.

In order to determine damages, the Court may "presume the accuracy of Plaintiffs' recollection and estimates of hours worked set forth in their affidavits and damages calculations."  Cao, 727 F. Supp. 3d at 296.  "[C]ourts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof by relying on his recollection alone."  Galicia v. 63-68 Diner Corp., No. 13 Civ. 3689 PKC, 2015 WL 1469279, at *4 (E.D.N.Y. Mar. 30, 2015) (alteration in original & internal quotation omitted).  Where an employer fails "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence[,] . . . the court may . . . award damages to the employee, even though the result may be approximate."  Vazquez v. Cousins Grocery & Grill Inc., No. 21 Civ. 4528 (RML), 2025 WL 1384069, at *6 (E.D.N.Y. May 13, 2025) (internal quotations omitted).  The Court may accept Plaintiffs' estimates regarding the amounts they are owed, including any tips withheld.  See Solis v. Tropical Rest. Bar Inc., No. 23 Civ. 1707 (ENV) (MMH), 2024 WL 4271234, at *15 (E.D.N.Y. Sept. 19, 2024).  "Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing."  Gunawan, 897 F. Supp. 2d at 83.  Accordingly, the Court considers the Complaint and the declarations that Plaintiffs submitted in support of the Motion,[15] and it assesses each Plaintiff's claim separately.

---

[15] These declarations include those of Benjamin Pagano ("First Pagano Decl.," ECF No. 122-11; "Second Pagano Decl.," ECF No. 141-2), Paige Acevedo ("First Acevedo Decl.," ECF No. 122-13; "Second Acevedo Decl.," ECF No. 141-6), Maggie McNeil ("First McNeil Decl.," ECF No. 122-12; "Second McNeil Decl.," ECF No. 141-3), Aaron Applebey ("Applebey Decl.," ECF No. 141-1), Nara Avakian ("Avakian Decl.," ECF No. 141-4) and Nathan Searing ("Searing Decl., ECF No. 141-5).

"[I]t remains the [P]laintiffs' burden to prove damages to a 'reasonable certainty.'" Lopez v. Yossi's Heimishe Bakery Inc., No. 13 Civ. 5050 (FB) (CLP), 2015 WL 1469619, at *9 (E.D.N.Y. Mar. 30, 2015) (quoting Credit Lyonnais, 183 F.3d at 155). In order to establish this reasonable certainty, the Court must "determin[e] the proper rule for calculating damages . . . and assess[] plaintiff[s'] evidence supporting the damages to be determined under this rule." Credit Lyonnais, 183 F.3d at 155. A court may deny a default judgment motion if "[t]he record evidence does not provide a sufficient basis for determining a damages award." Singh v. Mowla, No. 19 Civ. 4687 (PKC) (LB), 2022 WL 17820099, at *11 (E.D.N.Y. Sept. 30, 2022) (finding that the record did "not even provide enough evidence to establish the number of hours that plaintiffs worked each week," so the court could not "determine [the plaintiffs'] hourly rate of pay"). A court may decline to award damages in a default-judgment motion if the plaintiff cannot prove damages to a reasonable certainty, "even where liability has been established[.]" HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018); see Credit Lyonnais, 183 F.3d at 155.

### 1. Minimum Wage

#### a. Named Plaintiffs

##### i. Mr. Pagano

From September 14, 2021, to May 2, 2022, Mr. Pagano worked three six-hour shifts per week and was paid $77.00 per shift. See Am. Compl. ¶¶ 56-59. This Court calculates Mr. Pagano's minimum-wage damages as follows:

| Period | No. of Full Weeks | Hours Per Week | Reg. Rate | MW Rate | MW Owed Per Week | Total MW Owed |
|--------|-------------------|----------------|-----------|---------|------------------|---------------|
| 9/14/2021 - 5/2/2022 | 33 | 18 | $12.83 | $15.00 | $39.06 | $1,288.98 |

31

Accordingly, this Court respectfully recommends that Mr. Pagano be awarded $1,288.98 in minimum-wage damages.

### ii.    Ms. McNeil

From June 4, 2021, to May 2, 2022, Ms. McNeil worked four eight-hour shifts per week and was paid $45.00 per shift.  See Am. Compl. ¶¶ 83-86.  This Court calculates Ms. McNeil's minimum-wage damages as follows:

| Period | No. of Full Weeks | Hours Per Week | Reg. Rate | MW Rate | MW Owed Per Week | Total MW Owed |
|---|---|---|---|---|---|---|
| 6/4/2021 - 5/2/2022 | 47 | 32 | $5.63 | $15.00 | $299.84 | $14,092.48 |

Accordingly, this Court respectfully recommends that Ms. McNeil be awarded $14,092.48 in minimum-wage damages.

### iii.    Ms. Acevedo

From the information provided by Plaintiffs, the Court cannot calculate Ms. Acevedo's total minimum-wage damages for the entirety of her employment.  In particular, from "February 2022" to her termination on May 2, 2022, Ms. Acevedo worked "from time-to-time" as a substitute for other employees, when she was not working as a manager.  See Am. Compl. ¶¶ 65, 70, 76.  When she worked a substitute evening shift, Ms. Acevedo was paid $75 to work from 8:00 p.m. to 4:00 a.m.  See id. ¶ 77.  When she worked a substitute afternoon shift, Ms. Acevedo was paid $75 per shift to work from 2:00 p.m. to 8:00 p.m.  See id.   She does not state how many times per week she worked these additional shifts and, for each additional shift, which schedule she worked.  Moreover, Ms. Acevedo does not provide specific dates for her changes in shifts worked and amount paid.

Accordingly, this Court respectfully recommends that the Motion be denied without prejudice as to Ms. Acevedo's minimum-wage damages.

### b.  Opt-In Plaintiffs

As to Opt-In Plaintiffs, Plaintiffs did not submit sufficient information from which the Court may determine damages.  For example, despite stating approximate dates of employment, Ms. Applebey does not declare her rate of pay and only provides a range of hours worked by Defendants' employees generally.  See Applebey Decl. ¶¶ 4, 19.  Although Ms. Avakian provides her rate of pay and approximate dates of employment, see Avakian Decl. ¶ 22, she does not state her actual hours worked per shift or how many shifts she worked per week.  The other Opt-In Plaintiffs, who did not submit declarations, fail to plead their dates of employment, rates of pay, and hours worked, see Am. Compl. ¶¶ 99-182, or to provide such information in declarations.

Accordingly, because Plaintiffs have not met their burden of proof to a "reasonable certainty," this Court respectfully recommends that the Motion be denied without prejudice as to Opt-In Plaintiffs' minimum-wage damages.

### c.  Class

Plaintiffs state that, "due to lack of records from Defendants,"[16] "[i]t is nearly impossible to determine precisely how many of the class members" were paid below the relevant New York State minimum-wage rate.  Suppl. Ltr. at 2.  To arrive at their proposed total amount of minimum-wage damages owed to the Class,[17] Plaintiffs "approximate the best [they] can based on testimony, affidavits and declarations."  Id.  Plaintiffs contend that

> [t]he record and other submissions in this case have established that [BPH and Chispa] generally had three (3) shifts per day (with some exceptions for Chispa in 2020 during the peak of the Covid 19 pandemic) with each shift lasting between 6

---

[16] The Court is cognizant of the challenges presented by Defendants' failure to produce employment records in this case and has sanctioned BPH Defendants for these and other failures.

[17] The Court understands this calculation to include Named Plaintiffs' and Opt-In Plaintiffs' damages.

to 8 hours each.  Most of the daytime shifts had one (1) employee but there were two (2) employees in a number of the nighttime shifts, particularly at Defendant BPH.  Most of the class members were paid a base rate of, from the information and records we have, either $45.00 per shift or $11.00 per hour.  If we were to divide $45.00 by a 6-hour shift, then the employees' base pay comes out to $7.50 per hour, which is less than the applicable New York minimum wage during the class period. . . . Based on this calculation, each location had 21 shifts per week at 6 hour[s] each. There were conservatively 126 work hours for the class members each week. Basing each class member being underpaid by $4.00 each hour, this means that Defendants owe the class $504.00 in underpayment of minimum wages each week if there were 21 shifts per week.

There was a total of 428 weeks during the Class period for Defendant BPH. We obtained the total underpayment of minimum wages for BPH to be $215,712 by multiplying $504 by 428 weeks.

As for Defendant Chispa, there was a total of 139 weeks from when it opened in June 2019 until January 31, 2022.  If we were to assume that Chispa had the full 126 work hours each week, then it would owe the class members a total of $70,056 in underpayment of minimum wages. However, based on the . . . [Searing and Avakian Declarations] Defendant Chispa only had 7.5 available work hours from April 2020 until June 2020 (or 52.5 hours per week during this 12 week time period or a total of 630 work hours during this 12 week period). Defendant Chispa then increased to a total of 12.5 hours of available work hours per day from June 2020 until early December 2020 (or 87.5 work hours per week during this 24-week period or a total of 2,100 work hours during this time period). Defendant Chispa then resumed having three (3) shifts per day starting from December 2020 until its closing.

Due to the reduced hours of operations during the 36-week period in 2020 for the Chispa location, we therefore reduce the amount that would be owed to the employees during this time period.

For the time period between April and June 2024, there was a total of 73.5 less work hours each week from the typical 126 work hours or a total of 882 less work hours during this time period. If we multiply 882 hours by $4.00, we would get a $3,528 reduction from the total amount owed to the workers had there not been any reduction of work hours. For the time period between June to December 2022, there was a total of 38.5 less work hours each from the typical 126 works or a total of 924 less work hours during this period. If we multiply 924 hours by $4.00, we would get a $3,696 reduction from the total amount owed to the workers had there not been any reduction in work hours.

Plaintiffs therefore calculate that there was a total of $62,832 in underpayment of minimum wage for the class at Defendant Chispa by reducing $7,224 ($3,528 + $3,696) from $70,056.

Suppl. Ltr. at 2-3.

The assumptions used to make these calculations are not sufficiently supported in the record for the Court to accept them as meeting the "reasonable certainty" standard. See Gomez Cruz v. Ding Feng Lin Constr. LLC, No. 24 Civ. 2657 (MKB) (VMS), 2025 WL 2933201, at *20 (E.D.N.Y. Aug. 15, 2025) (finding that, although plaintiffs demonstrated liability, the Court could not determine damages where plaintiffs' submissions lacked specificity about the hours plaintiffs worked), R&R adopted, 2025 WL 2602265 (E.D.N.Y. Sept. 9, 2025).  For example, as to the rate of pay for Class members, despite it being a "conservative assumption," Plaintiffs fail to show that most of the Class members were paid either $45.00 per shift or $11.00 per hour. They do not show a basis for extending the Named Plaintiffs' schedules and pay of the Class representatives to the Class.  Reviewing the Named and Opt-In Plaintiffs' submissions, the Court concluded that Mr. Pagano was paid a regular rate of $12.83; Ms. Acevedo's rate varied between $5.63, $12.83 and $16.67; and Ms. McNeil was paid a regular rate of $5.63.  See, supra, Part III.C.3.a.  The Court, however, could not determine the regular rate of pay for the Opt-In Plaintiffs.  See id.  Where the Class representatives' rates of pay vary significantly and there is no specific evidence about the Class members' pay rates or the Defaulting Defendants' regular business practices, Plaintiffs' Class calculations lack sufficient support.

By way of another example, the deposition testimony of the Individual Defendants, which Plaintiffs submitted in support of the Motion, does not support the conclusion that Plaintiffs were underpaid $4.00 per hour.  Mr. Enayatian testified that some employees at BPH were paid hourly and others were paid per shift, and that the rate of pay differed per shift per employee.  See Tr. Enayatian Dep. 17:10-13, 21:17-23 ($11 per hour for the "morning shift"), 23:7-12 ($45 per shift for the night shift, which ended between 2:00 a.m. and 4:00 a.m.), ECF No. 122-3.  Mr. Laroda testified that all employees at BPH were paid by the shift that they

35

worked, which was the policy throughout his employment at BPH.  See Tr. Laroda Dep. 34:20-25, ECF No. 122-4.  Mr. Beckett testified that employees at Chispa were paid $11.00 per hour "plus tip."  See Tr. Beckett Dep. 68:13-23, ECF No. 122-5.

Assuming these facts as true for purposes of the Motion, the Court cannot conclude that each Class member was underpaid $4.00 per hour.

Even beyond the particular pay rates per hour or per shift, the Court cannot conclude with "reasonable certainty" the number of hours or shifts for which Class members would be entitled to additional compensation.  Plaintiffs do not provide evidentiary support for their conclusion that BPH had three shifts per day and one employee per shift.  For example, Ms. Avakian declares that Chispa had one employee per shift and that BPH "had more than one employee in some of its shifts," which lasted between six and eight hours.  See Avakian Decl. ¶¶ 27, 29-30.  Mr. Enayatian testified at his deposition that BPH had three or four shifts, depending on whether there were shows.  See Tr. Enayatian Dep. 17:18-19.  Ms. Acevedo and Mr. Pagano also both worked the same shift on Wednesdays.   See Am. Compl. ¶¶ 58, 75.

The differences that Plaintiffs attempt to smooth over via their collective calculations for the Class are not de minimis: changes in the assumptions used to estimate minimum-wage underpayment would significantly alter the amount of damages owed to the Class.  Other than contending that the damages calculations are based on "conservative" estimates of hours worked and amounts paid, Plaintiffs' estimates do not account for the substantial evidentiary inconsistencies presented to the Court.  Plaintiffs otherwise do not attempt to proffer any reasonable estimates properly supported by testimony and documentary evidence.  The most obvious omission is that they do not submit declarations from the Named Plaintiffs or Opt-In Plaintiffs containing specific non-conclusory details about their own experiences as employees,

36

their knowledge of other employees' presence, hours or compensation; or the general operations of either or both businesses.  Although the Court may make estimates of damages based on Plaintiffs' or witnesses' recollections and does not expect exacting recitations of schedules, hours, staffing numbers or pay rates, Plaintiffs fail to submit even a minimal amount of consistent evidence from which the Court could extrapolate calculations of unpaid-wage damages on behalf of the Class.  Accordingly, Plaintiffs have failed to establish their minimum-wage damages "to a reasonable certainty," see Bolivar v. FIT Int'l Grp. Corp., No. 12 Civ. 781 (PGG) (DF), 2017 WL 11473766, at *13 (S.D.N.Y. Mar. 16, 2017), R&R adopted, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019).

As such, except for the two Named Plaintiffs' damages discussed above, this Court respectfully recommends that the Motion be denied without prejudice as to any NYLL minimum-wage damages.[18]

### 2.    Withheld Tips

Plaintiffs calculate the total amount of withheld tips "by adding the gross credit card sales of both Defendant BPH and Chispa from the records subpoenaed from the credit card companies during the class period."  Suppl. Ltr. at 1.  Plaintiffs multiply the "gross sales totals by 15% to obtain the total credit card tips paid by the customers."  Id. at 1-2.  To obtain the total amount of withheld tips, $109,889.00, Plaintiffs then "multiply the tips paid by 20%."  Id. at 2.

In support of these calculations, Plaintiffs filed two excerpts of credit card records they obtained via subpoena.  In the "Clover Records," which are a "sales overview" from June 1, 2021, through May 31, 2022, the amount of tips is $20,030.72, and the net sales is $132,370.08, which reflects an approximate amount of 15% in tips.  See Clover Records, ECF No. 141-7.  The

---

[18] Any calculation of damages under the FLSA would face the same challenges.

other excerpt of credit-card records, ECF No. 122-8, appears to be individual charges on discrete days from December 31, 2016, through December 30, 2022.  Plaintiffs do not provide the gross amount of credit-card sales on a weekly, monthly or yearly basis during this period, let alone any evidence to substantiate such an amount.

Accordingly, Plaintiffs' calculations do not provide sufficient evidence to demonstrate their withheld tips damages "to a reasonable certainty."  HTV Indust., Inc., 317 F. Supp. 3d at 717; see JC Hosp. v. Hochberg, No. 23 Civ. 2051 (LJL), 2025 WL 3124313, at *20 (S.D.N.Y. Nov. 7, 2025) (denying motion for default judgment on damages where plaintiff failed to provide any evidence in support of calculations) (collecting cases).  Again, Plaintiffs fail to submit supporting evidence from the Named Plaintiffs or Opt-In Plaintiffs to provide an estimate of revenue or tips usually received from which tip damages could be extrapolated.  See, e.g., St. Louis v. Sugar Rush Inc., No. 23 Civ. 6373 (RER) (TAM), 2025 WL 2585569, at *12 (E.D.N.Y. Aug. 18, 2025) (awarding tips to a restaurant server in the amount of $165 per day based on plaintiff's testimony at inquest that she earned between $5-15 in cash tips and $160-$170 in credit card tips), R&R adopted sub nom., 2025 WL 2576431 (E.D.N.Y. Sept. 5, 2025); Lunnon v. Rigolo Prods. LLC, No. 22 Civ. 7560 (RPK) (RML), 2025 WL 1309488, at *4 (E.D.N.Y. Jan. 27, 2025) (awarding tips in the amount of $250 per week based on plaintiff's "experience, conversations with co-workers, and personal observations"), R&R adopted Mar. 10, 2025. These failings apply to the Named Plaintiffs as well as the Class members.

As such, this Court respectfully recommends that the Motion be denied without prejudice as to any damages for withheld tips.

38

### 3. Other Damages

#### a. Liquidated Damages

Plaintiffs request an award of liquidated damages on their minimum-wage and withheld-tip compensatory damages. See Pls. Mem. at 12-13. Under the NYLL, an employer liable for a wage-and-hour violation owes the plaintiff the "full amount of any such underpayment, and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1-a). "[L]iquidated damages are presumed unless [the] defendants can show subjective good faith." Fermin, 93 F. Supp. 3d at 47 (quoting Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012)) (noting that defendants "have not established good faith to rebut the liquidated damages presumption" if they have not appeared). Although liquidated damages are not available in every wage-and-hour action, they are routinely awarded on a grant of a default judgment. Generally, if, as here, liability is found, then liquidated damages will follow.

Here, by defaulting, Defendants have not demonstrated the requisite "good faith" to avoid imposition of liquidated damages. See, e.g., Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 Civ. 4895 (LDH) (SJB), 2019 WL 8381264, at *13 (E.D.N.Y. Dec. 9, 2019) (collecting cases).

Where a plaintiff is entitled to liquidated damages under both the FLSA and NYLL, double recovery under both statutes is generally not available. See Chowdury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016). In these instances, courts may award liquidated damages under the statute that provides the greater potential recovery. See Wu v. Nat. Tofu Rest. Corp., No. 16 Civ. 3613 (ARR) (ST), 2018 WL 1009274, at *10 (E.D.N.Y. Feb. 20, 2018) (collecting cases).

Here, the NYLL provides the greater recovery, so the Court awards liquidated damages on the full amounts of Plaintiffs' NYLL compensatory wage damages. As such, for their minimum-wage damages, this Court respectfully recommends that Mr. Pagano be awarded $1,288.98 in liquidated damages and that Ms. McNeil be awarded $14,092.48 in liquidated damages.

### b. Prejudgment Interest

Plaintiffs seek an award of prejudgment interest on their unpaid-wage damages. See Pls. Mem. at 13-14. The NYLL, unlike the FLSA, permits awarding prejudgment interest to Plaintiff in addition to compensatory and liquidated damages. See Zabrodin, 702 F. Supp. 3d at 123-24. An award of pre-judgment interest is based only on compensatory, not liquidated, damages. See id. at 124.

Prejudgment interest under the NYLL is calculated at nine percent per year, see N.Y. C.P.L.R. § 5004(a), at a simple, not compounded, rate, see Fermin, 98 F. Supp. 3d at 49. Interest begins accruing "from the earliest ascertainable date the cause of action existed[.]" N.Y. C.P.L.R. § 5001(b). If, as here, damages are based on multiple violations of law, stemming from different dates, "interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id. For NYLL claims, where wage-and-hour violations may occur on each workday, courts generally calculate prejudgment interest "from the midpoint date of the claims through the date judgment is entered." Sanchez, 643 F. Supp. 3d at 380 (citations omitted).

In order to compute prejudgment interest, the Court first calculates a per diem interest rate, by multiplying Plaintiff's total award of compensatory damages by 0.09 and dividing the result by 365. See Reyes-Fana, 2022 WL 5428688, at *14 n.6. The per diem interest rate is added to the total damages amount for each day, starting at the midpoint date of the claims, until

40

the entry of judgment.  See id. at *14.  The Court rounds the per diem rate to the nearest penny.

The Court calculates prejudgment interest for Mr. Pagano and Ms. McNeil as follows:

|  | Mr. Pagano | Ms. McNeil |
|---|---|---|
| NYLL Compensatory Damages | $1,288.98 | $14,092.48 |
| Per Diem Interest Rate | $.32[19] | $3.47[20] |
| Midpoint Between Claims | 1/7/2022[21] | 11/17/2021[22] |
| Date for Interest Calculation | 2/23/2025 | 2/23/2025 |
| Days Between Midpoint And Date for Interest Calculation | 1,143 | 1,194 |
| Prejudgment Interest | $365.76 | $4,143.18 |

Accordingly, this Court respectfully recommends that Mr. Pagano be awarded $365.76

plus $.32 per diem in prejudgment interest from February 23, 2025, until the date on which

judgment is entered, and that Ms. McNeil be awarded $4,143.18 plus $3.47 per diem in

prejudgment interest from February 23, 2025, until the date on which judgment is entered.

### 4.      Class Decertification

As described above, the Court has provided Plaintiffs multiple opportunities to amend

and supplement their motion for default judgment.  See, supra, Part I.B.  Although the Court's

preference is not to allow Defendants to "prevent their employees from obtaining their full

procedural and substantive rights under federal and state law by cowering silently in the swamp

of neglect of employees' claims for wages," Poplawski v. Metroplex on the Atl., LLC, No. 11

Civ. 3765 (JBW), 2012 WL 1107711, at *1 (E.D.N.Y. Apr. 2, 2012), Plaintiffs have as yet been

unable to demonstrate class-wide damages.  Although damages calculations "need not be exact"

---

[19] ($1,288.98 x .09)/365

[20] ($14,092.48 x .09)/365

[21] Mr. Pagano's damages begin on September 14, 2021, and end on May 2, 2022, making January 7, 2022, the midpoint for this period.

[22] Ms. McNeil's damages begin on June 4, 2021, and end on May 2, 2022, making November 17, 2021 the midpoint for this period.

to maintain a class action, Plaintiffs must show that "damages are capable of measurement on a class[-]wide basis." Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013).

"There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001). "[D]istrict courts have the authority to sua sponte decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before final judgment is entered." Jin v. Shanghai Original, Inc., 990 F.3d 251, 261 (2d Cir. 2021); see Bolivar v. FIT Int'l Grp. Corp., No. 12 Civ. 781 (PGG) (DF), 2017 WL 11473766, at *31 (S.D.N.Y. Mar. 16, 2017) (finding that counsel's failure "make an adequate damages presentation" after four attempts demonstrated inadequacy sufficient to sua sponte decertify the class), R&R adopted, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019). Even where a class is certified as to liability, it need not be certified as to damages. See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 142 (S.D.N.Y. 2014) (declining to certify on damages where plaintiffs made insufficient showing of model to "permit the calculation of damages on a classwide basis").

In light of Defendants' prior failures to comply with Orders of the Court, including to pay monetary sanctions or post bond, see Orders dated 1/24/2024, 9/19/2023 (noting that Defendants' conduct was "obstructionist," including failure to produce employment records and employment policies); ECF No. 87, this Court respectfully recommends that Plaintiffs be

42

provided one additional opportunity to make a legally sufficient showing of class damages, the failure of which should result in decertification of the Class, with notice provided to the Class if possible.

*      *      *

Should the District Court adopt this report and recommendation, this Court respectfully recommends that Plaintiffs be given leave to file a new motion for additional damages consistent with this report within 30 days of its adoption, if it is adopted.[23]   Any updated statement of damages must comply with the following requirements, among other things.

As to minimum-wage damages for Ms. Acevedo and Opt-In Plaintiffs, any renewed request must include a chart of damages, which sets forth, inter alia, each individual's dates of employment, hours worked per week, amount paid per week, and total amount owed in minimum-wage damages, as well as sworn declarations which provide a factual basis for such calculations.

As to minimum-wage damages for the Class, Plaintiffs must provide sufficient factual support for any assumptions upon which they calculate requested damages.  Any estimates of total shifts per day or pay received must take into account the facts Plaintiffs have previously presented to the Court.  Even if the witness recollections are approximate, Plaintiffs must provide some concrete evidentiary basis to support the requested awards.

---

[23] In addition to compensatory damages, Plaintiffs seek liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees and costs.  See Pls. Mem. at 12-17; Prop'd Order, ECF No. 131-4.  Plaintiffs' counsel is likely to spend more time working on this matter should the District Court adopt this report and recommendation, so the Court declines to consider Plaintiffs' requests for additional damages, interest, attorneys' fees and costs at this time.  The Court respectfully recommends that these requests be denied without prejudice, and that leave be granted for Plaintiffs to request these monetary awards in a renewed motion for damages.

As to withheld tips, Plaintiffs must provide evidentiary support for their calculations of compensatory damages of withheld tips.  In particular, if Plaintiffs seek to calculate these damages on the basis of gross sales, they must file documentary support for such sales sufficient for the Court to determine that the damages can be calculated "to a reasonable certainty." Similarly, if Plaintiffs seek to estimate on the basis of Plaintiffs' recollections, Plaintiffs must provide sufficient support for, and clear calculations of, these estimates.

If Plaintiffs' counsel seeks attorneys' fees and costs, counsel should submit updated billing records and invoices for this action along with any motion for damages.  Any renewed motion must also request the full scope of relief that Plaintiffs seek, such as, <u>inter alia</u>, liquidated damages, interest and attorneys' fees.

## IV.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that the Motion be granted as to liability, specifically that Defaulting Defendants be found jointly and severally liable under the NYLL for failing to pay Named Plaintiffs, Opt-In Plaintiffs and the Class at the applicable minimum-wage rates and under the NYLL and FLSA for withholding tips from Named Plaintiffs, Opt-In Plaintiffs and the Class.

This Court recommends further that Mr. Pagano be awarded:

- $1,288.98 in minimum-wage compensatory damages,
- $1,288.98 in liquidated damages, and
- $365.76 plus $.32 <u>per diem</u> in prejudgment interest from February 23, 2025, until the date on which judgment is entered.

This Court recommends further that Ms. McNeil be awarded:

- $14,092.48 in minimum-wage compensatory damages,
- $14,092.48 in liquidated damages, and

- $4,143.18 plus $3.47 <u>per diem</u> in prejudgment interest from February 23, 2025, until the date on which judgment is entered.

This Court recommends further that, except as discussed above, the Motion be denied without prejudice as to damages, and that Plaintiffs be permitted to file a motion for damages and other monetary relief, consistent with this report and recommendation, within 30 days of its adoption, if it is adopted.

## V.    OBJECTIONS

This report and recommendation will be filed electronically.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day objection period.  Failure to timely file objections will preclude further review of this report and recommendation by either the District Court or the Court of Appeals.  <u>See</u> <u>Miller v. Brightstar Asia, Ltd.</u>, 43 F.4th 112, 120 (2d Cir. 2022).

The Court will mail a copy of this report and recommendation to Defendants Hooman Enayatian at 1288 Myrtle Avenue, Brooklyn, New York 11221 and at 2 Brewer Avenue, Great Neck, NY 11023; HN & Sons LLC at 1288 Myrtle Avenue Brooklyn, NY 11221 and 100 Merrick Rd, Ste 400E, Rockville Centre, NY; and Derihu 18 LLC at 259 St. Nicholas Avenue, Brooklyn, NY 11237. <u>See</u> ECF No. 115 p. 19. The Court will also e-mail a copy of this report and recommendation to Mr. Enayatian at Hooman@bushwickpublichouse.com.

Dated: Brooklyn, New York
           February 26, 2026

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge